# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **E.C. and C.O. individually and on behalf of C.C.O.** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO.  13-6047** |
| **SCHOOL DISTRICT OF PHILADELPHIA** | : | |
| | : | |
| | : | |

**MEMORANDUM**

**Tucker, C. J.**                                                                                           **March_____, 2015**

Before the Court is Plaintiffs E.C. and C.O.'s Motion for Attorney's Fees and Costs

(Doc. 12), Defendant School District of Philadelphia's Response in Opposition thereto (Doc. 14),

and Plaintiffs' Reply Brief in Further Support of Plaintiffs' Motion for Attorney's Fees and Costs

(Doc. 15).  For the reasons set forth herein, the Court will grant Plaintiffs' Motion for Attorney's

Fees and Costs and award Plaintiffs $81,849.00 in attorney's fees and $900.00 in costs.

## I.        Factual Background

Plaintiffs E.C. and C.O. (collectively, "Plaintiff Parents") are the parents of C.C.O., a

student in the School District of Philadelphia ("School District").  On or about March 14, 2013,

Plaintiff Parents filed an administrative due process complaint, alleging violations of the

Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400 *et seq.* ("IDEIA"),[1]

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Section 504"), and the

Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA").  The complaint alleged

that the School District violated the IDEIA by failing to provide an Individualized Education

---

[1] The Individuals with Disabilities Education Act ("IDEA") was renamed the Individuals with Disabilities Education Improvement Act ("IDEIA") by amendment, effective July 1, 2005. Pub. L. No. 108-446, § 1, 118 Stat. 2647 (2004).

Program ("IEP") that afforded C.C.O. a free appropriate public education ("FAPE").  Plaintiff Parents sought relief in the form of (a) compensatory education from September 21, 2012 through October 31, 2012 and (b) tuition reimbursement for private school tuition for the remainder of the 2012–2013 school year.  Counsel for Plaintiff Parents throughout these administrative proceedings included Attorneys David J. Berney ("Attorney Berney"), Vanita Kalra ("Attorney Kalra"), and Jennifer Sang ("Attorney Sang").

Following an administrative hearing, an opinion was issued that awarded Plaintiff Parents all of the relief sought.  The hearing officer concluded that C.C.O. was denied a FAPE in the areas of Reading, Math, Writing, and Supplementary Aids and Services.  However, the hearing officer also determined that C.C.O. was not denied a FAPE in the areas of Speech and Language and Postsecondary Transition.

On October 16, 2013, Plaintiff Parents instituted this action to recover attorney's fees and costs under the IDEIA, Section 504, and the ADA.  Defendant School District filed a Motion for a More Definite Statement, which this Court denied on January 13, 2014.  Plaintiff Parents subsequently filed the instant Motion for Attorney's Fees and Costs, requesting fees and costs totaling $85,973.88.  The School District filed a response in opposition to this motion, asserting that Plaintiff Parents are entitled to no more than $18,207.39 in fees and $400 in costs.  Plaintiff Parents filed a reply in further support of their original motion, seeking additional reimbursement for hours incurred since the filing date of the instant motion in the amount of $5,906.50.

## II.    **Legal Standard**

The IDEIA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability . . . ."  20 U.S.C. § 1415(i)(3)(B).

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The fee petitioner must provide evidence "supporting the hours worked and rates claimed." *Id.* Once the fee petitioner submits evidence supporting the hours worked and rates claimed, the party opposing the fee application has the burden of challenging the reasonableness of the requested fee. *McKenna v. City of Philadelphia*, 582 F.3d 447, 459 (3d Cir. 2009) (citing *Rode*, 892 F.2d at 1183). A district court should not "decrease a fee award based on factors not raised at all by the adverse party." *McKenna*, 582 F.3d at 459 (quoting *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)).

The calculation of the appropriate amount of attorney's fees begins with the lodestar, which is the product of "the appropriate billing rate for the party's attorneys" multiplied by "the number of hours those attorneys reasonably expended on the action." *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). The reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403, 413 (3d Cir. 2013). To determine the prevailing market rate, "a court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Interfaith Cmty. Org.*, 426 F.3d at 708 (quoting *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001)).

"The best evidence of a prevailing market rate is counsel's customary billing rate . . . ." *Mitchell v. City of Philadelphia*, No. 99-6306, 2010 WL 1370863, at *14 (E.D. Pa. Apr. 5, 2010).

> Where the fee movant has no customary rate and will not be charging the movant any fee, the prevailing market rate can be

3

> established from several sources, including: (1) affidavits of
> counsel with similar experience as to what they would charge for a
> similar case; (2) bar surveys of customary rates; (3) the amount
> charged by counsel for the opposition in the particular case or
> similar litigation; (4) the amounts awarded counsel with similar
> experience in similar litigation; and (5) the amounts awarded for
> the services of counsel in prior litigation.

*Id.* (internal quotation marks omitted) (quoting 10 JAMES WM. MOORE ET AL., MOORE'S

FEDERAL PRACTICE ¶ 54.190 (3d ed. 2009)).  In addition to determining the reasonable hourly

rate, the court must examine the hours requested and exclude those which were not reasonably

expended.  *Interfaith Cmty. Org.*, 726 F.3d at 416 (quoting *Interfaith Cmty. Org.*, 426 F.3d at

711).  Hours are not reasonably expended if they "are excessive, redundant, or otherwise

unnecessary."  *See Interfaith Cmty. Org.*, 726 F.3d at 416 (quoting *Interfaith Cmty. Org.*, 426

F.3d at 711).  A district court must reduce the hours requested by the number of hours spent

litigating distinct, unsuccessful claims.  *Dee v. Borough of Dunmore*, 548 F. App'x 58, 64 (3d

Cir. 2013) (citing *Hensley v. Eckhart*, 461 U.S. 424, 434-35 (1983)).  A district court may also

deduct hours that are inadequately documented.  *See Dee*, 548 F. App'x at 64.  Finally, once the

lodestar has been calculated, a court may adjust the lodestar downward if the prevailing party is

only partially successful.  *Id.*

## III.   Discussion

### a. Reasonable Hourly Rates

The parties do not dispute Attorney Berney's hourly rate of $350 per hour.  (Def.'s Resp.

in Opp'n to Mot. for Att'y Fees 2–3).  The parties, however, dispute the rates of Attorneys Kalra

and Sang.

Plaintiff Parents request hourly rates that they contend are the customary hourly rates for

Attorneys Kalra and Sang in special education cases: $265 and $225, respectively.  In support,

they provided the declarations of Attorneys Berney, Kalra, and Sang, which state that these hourly rates are their customary rates for such cases.  (Pls.' Mot. for Att'y Fees, Ex. A at ¶¶ 21-27, Ex. I at ¶ 9, Ex. J at ¶ 14).  Plaintiff Parents also provided the declarations of various attorneys whom they contend are "leaders in the special education and/or civil rights field and have contemporary knowledge of the prevailing market rates for attorneys in this practice area." (Pls.' Mot. for Att'y Fees 5).

In support of Attorney Kalra's hourly rate, Plaintiff Parents provided the declarations of attorneys Judith Gran,[2] Lorrie McKinley,[3] Jennifer Clarke,[4] and Jonathan Feinberg.[5]  In support of Attorney Sang's hourly rate, Plaintiffs provided the declarations of attorneys Clarke, McKinley, Mary Catherine Roper,[6] Suzanne Young,[7] and Joshua Kershenbaum.[8]  These

---

[2] Judith Gran is a partner in the law firm Reisman Carolla Gran, LLP.  (Pls.' Mot. for Att'y Fees, Ex. B at ¶ 1).  Prior to acquiring this position, Ms. Gran worked as a staff attorney at the Public Interest Law Center of Philadelphia and as Director of Disability Projects at the Law Center.  (Id. at ¶ 1).  She is a founding member of the Council of Parent Attorneys and Advocates, a national organization of lawyers that represents parents on behalf of special education students.  (Id. at ¶ 2).  She has also prepared and reviewed numerous petitions for attorney's fees and costs under federal fee shifting statutes.  (Id. at ¶ 6).

[3] Lorrie McKinley is a partner at the law firm McKinley & Ryan, LLC, where she exclusively practices civil rights litigation.  (Pls.' Mot. for Att'y Fees, Ex. C at ¶ 1).  Ms. McKinley formerly worked as the Project Head of the Employment Law Project at Community Legal Services, Inc. ("CLS").  (Id. at ¶ 2).  In that capacity, Ms. McKinley represented clients in regular education, special education, and guardianship matters.  (Id.).  While at CLS, Ms. McKinley also served as Chairperson of CLS's Attorneys' Fees Committee.  (Id. at 3).  In this position, she researched and established attorney's fee rates and testified periodically in attorney's fees cases regarding prevailing market rates.  (Id.).  She also served on the faculty at both the University of Pennsylvania Law School and Villanova University School of Law.  (Id. at ¶¶ 4–5).

[4] Jennifer Clarke is the Executive Director of the Public Interest Law Center of Philadelphia.  (Pls.' Mot. for Att'y Fees, Ex. D at ¶ 2).  In this position, she conducted an in-depth review of the available data on the rates charged in this market for comparable work.  (Id. at ¶ 7).  Prior to acquiring this position, Ms. Clarke was a partner at Dechert Price & Rhoads.  (Id. at ¶ 4).  In this capacity, she was responsible for establishing hourly rates for her partners and associates.  (Id. at ¶ 5).

[5] Jonathan Feinberg is a partner at the law firm of Kairys, Rudovsky, Messing & Feinberg LLP, which specializes in civil rights litigation and criminal defense.  (Pls.' Mot. for Att'y Fees, Ex. E at ¶ 2).

[6] Mary Catherine Roper is an attorney at the American Civil Liberties Union of Pennsylvania ("ACLU of PA").  (Pls.' Mot. for Att'y Fees, Ex. G at ¶ 2).  Prior to working at the ACLU of PA, Ms. Roper was a partner at Drinker Biddle & Reath LLP.  (Id. ¶ 2).  She has experience litigating numerous attorney's fee petitions.  (Id. at ¶ 4).

attorneys state that the requested hourly rates are reasonable and consistent with the rates of Philadelphia-area attorneys in the field with similar experience.  In fact, Attorneys Roper and Kershenbaum contend that the requested rate for Attorney Sang is below the prevailing market rate.  (*See* Pls.' Mot. for Att'y Fees, Ex. G at ¶ 9, Ex. F at ¶ 15).

Plaintiff Parents also provided National Law Journal survey data, which establishes the average and median hourly rates for comparably experienced associate attorneys in law firms with their principal office or largest office in the Philadelphia area.  (Pls.' Mot. for Att'y Fees 9–10, Ex. N).  The lowest reported average hourly rate for such an associate was $284, notably higher than the rates requested in the instant matter.  The National Law Journal survey in conjunction with the declarations provided by the Plaintiff Parents constitute prima facie evidence of the prevailing market rate.  *See Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 360 (3d Cir. 2001) (holding that the district court did not abuse its discretion in ruling that the affidavits of two attorneys with experience in the relevant field constituted prima facie evidence of the reasonable prevailing market rate); *Trucksess v. Thompson Auto. Grp., Inc.*, No. 10-4313, 2011 WL 6415047, at *11 (E.D. Pa. Dec. 14, 2011) (finding that the affidavit of a single attorney regarding the reasonableness of the requested rates was prima facie evidence of the prevailing market rates for attorneys).

---

[7] Suzanne J. Young is a supervising attorney at CLS in Philadelphia, PA.  (Pls.' Mot. for Att'y Fees, Ex. H at ¶¶ 3–4).  While at CLS, she has been responsible for negotiating attorney's fees and costs for cases litigated by CLS.  (*Id.* at 6).

[8] Josh Kershenbaum began his legal career as an attorney at Montgomery McCracken Walker & Rhoads, LLP.  (Pls.' Mot. for Att'y Fees, Ex. F at ¶ 5).  In that role, he was an "active member of the firm's Special Education Law practice group."  (*Id.*).  He presently has a firm where special education law constitutes more than eighty percent of his practice.  (*Id.* at ¶ 6).  He has represented hundreds of children with special needs and their families in special education law matters.  (*Id.* at ¶ 7).  He was also an adjunct professor at Temple University Beasley School of Law, where he taught a special education law seminar.  (*Id.* at ¶ 8). He has published a number of articles on topics relating to the rights of students with disabilities in Pennsylvania and New Jersey.  (*Id.* at ¶ 9).

The School District contends that the affidavits of Attorneys Berney, Kalra, and Sang should be stricken and disregarded because these attorneys "are incompetent to testify about the prevailing rates in the community." (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 9). In support, the School District cites *Holmes v. Millcreek Twp. Sch. Dist.*, where the Third Circuit stated that "[a]n attorney's showing of reasonableness must rest on evidence other than the attorney's own affidavits." 205 F.3d 583, 595 (3d Cir. 2000). Here, however, Plaintiff Parents have provided additional affidavits of other attorneys regarding the prevailing market rate in the community. Thus, this Court need not consider whether Attorneys Berney, Kalra, and Sang are competent to testify about the reasonableness of their own requested rates because other competent evidence sufficiently supports the reasonableness of their requested rates.

The School District also contends that requested rates should be adjusted downward in light of a Community Legal Services ("CLS") fee schedule, dated June 23, 2011. (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 6). Courts in this circuit have used the CLS fee schedule as a guide when determining an appropriate hourly rate. *See, e.g.*, *Pelzer v. City of Philadelphia*, 771 F. Supp. 2d 465, 470 (E.D. Pa. 2011). "[T]he Third Circuit has accepted the CLS fee schedule in some circumstances, such as where the attorney seeking recoupment of fees was associated with CLS, or where limited evidence was submitted by the parties." *Mitchell*, 2010 WL 1370863, at *15 (citing *Mary Courtney T. v. Sch. Dist. of Philadelphia,* No. 06–2278, 2009 WL 185426, at *3 (E.D. Pa. Jan. 22, 2009)).

Courts have also rejected using the CLS fee schedule for various reasons. *See, e.g.*, *Mitchell*, 2010 WL 1370863, at *15. For instance, in *Mitchell*, this Court declined to use the CLS fee schedule for the following reasons: (1) it did not reflect the prevailing rate at the time of the petition; (2) the attorneys were unaffiliated with CLS; (3) the parties had submitted sufficient

7

evidence of the prevailing market rates; and (4) "the CLS schedule [did] not take into account any specialized skills or experience the attorneys bring to their practice," which is contrary to governing precedent. *Id.*; *see also Davis v. Riddle & Assocs., P.C.*, 579 F. Supp. 2d 692, 694 (E.D. Pa. 2008) ("The CLS schedule, while a useful starting point, is not the exclusive tool to determine appropriate fees in the presence of other evidence.").

Here, this Court declines to use the suggested rates in the CLS fee schedule for the same reasons outlined in *Mitchell*. The CLS fee schedule reflects the rates as of June 2011, which predates this fee petition by nearly three years. *See Mitchell*, 2010 WL 1370863, at *15. The Plaintiffs' counsel are unaffiliated with CLS, and Plaintiffs—by providing the affidavits of attorneys Gran, Clarke, Feinberg, McKinley, Roper, Young, and Kershenbaum—have already produced sufficient evidence of the prevailing market rates. *See id.* Finally, the CLS fee schedule, standing alone, may not adequately reflect the skills and experience of Attorneys Kalra and Sang because the CLS fee schedule does not take into account any specialized skills in the field of special education. *See id.* Accordingly, this Court will not reduce Attorney Kalra or Sang's hourly rates on account of the CLS fee schedule.

Nevertheless, this Court concludes that Attorney Kalra's hourly rate should be reduced to $245. Attorney Kalra's affidavit mentions an array of experience dating from 2006. (Pls.' Mot. for Att'y Fees, Ex. I). However, most of this experience involves activities in the areas of housing or international law. (*Id.*) Attorney Kalra's activities do not appear to focus on special education law until 2013. (*Id.*) While the Court does not discount Attorney Kalra's prior experience, she has only been practicing specifically in the relevant field for two years. The Court thus sees fit to reduce Attorney Kalra's fees accordingly.

Attorney Sang has worked in special education law since March 2010. (Pls.' Mot. for Att'y Fees, Ex. J at ¶ 5). Since March 2011, approximately 90% of her practice has been devoted to special education matters. (*Id.* at ¶ 6). She has also successfully litigated a number of special education cases, including several cases where the School District was a party. (*Id.* at ¶¶ 7–8). In light of her relevant skills and experience, Attorney Sang's hourly rate of $225 is reasonable.

### b. Hours Reasonably Expended

#### i. Pre-Filing Work

The School District contends that Plaintiff Parents should not be reimbursed for time expended on a prior due process complaint filed by Plaintiff Parents, as that complaint had been settled by agreement prior to the filing of the underlying due process complaint. (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 11). The parties do not dispute that this prior due process complaint was settled by agreement before the filing of the underlying due process complaint. (*Id.*; Pls.' Reply in Supp. of Mot. for Att'y Fees 1). Plaintiff Parents contend that these time entries are compensable because they postdate the settlement agreement and are related to events and issues that led to the decision to bring the underlying due process complaint. (Pls.' Reply in Supp. of Mot. for Att'y Fees 1). Specifically, Plaintiff Parents aver that "[s]everal of the entries objected to by the School District involve the School District's ongoing failure to provide a [FAPE]" and thus "are the very issues at the heart of the due process matter underlying the instant [motion] . . . ." (*Id.*) For instance, some entries specifically refer to a "10-day letter" sent to the school. (*See* Pls.' Mot. for Att'y Fees, Exs. A and J). As noted by Plaintiff Parents, a parent's failure to send this letter to the school could constitute grounds for denying reimbursement for private school placement. *See* 34 C.F.R. § 300.148(d)(1)(ii).

9

Work performed prior to the filing of a due process complaint is compensable provided that the work is sufficiently related to the due process complaint. *See, e.g.*, *McClam v. D.C.*, 808 F. Supp. 2d 184, 190 (D.D.C. 2011) (finding charges related to consultations with expert prior to the filing of the due process complaint compensable because such consultations led to the filing of the due process complaint); *Rapu v. D.C. Pub. Sch.*, 793 F. Supp. 2d 419, 427 (D.D.C. 2011) (finding pre-filing work compensable because "it was reasonable to engage in work to ensure compliance with" a prior hearing officer decision).  In *Rapu*, the plaintiff received a favorable hearing officer decision ("HOD") and subsequently filed a second due process complaint that led to another hearing and favorable HOD.  793 F. Supp. 2d at 427.  The plaintiff argued that but for the defendants' failure to comply with the first HOD, the pre-filing legal activities performed would not have been necessary.  *Id.*  The court agreed, finding that such pre-filing activities were compensable and "proper because—as the results of the second hearing proved—it was reasonable to engage in work to ensure compliance with the original HOD."  *Id.*

Here, the pre-filing work performed by Plaintiff Parents' attorneys is sufficiently related to the underlying due process complaint.  Various time entries on October 5, 2012 refer to a 10-day letter.  (Pls.' Mot. for Att'y Fees, Ex. J at 7).  As stated earlier, a parent's failure to send this letter to the school can constitute grounds for denying reimbursement for private school placement.  *See* 34 C.F.R. § 300.148(d)(1)(ii).  Time entries prior to October 5, 2012 include correspondence with clients about private school placement and the settlement agreement.  (Pls.' Mot. for Att'y Fees, Ex. J at 7).[9] Such correspondence would have necessarily been required because Plaintiff Parents' attorneys could not have drafted the 10-day letter without input from

---

[9] Specifically, the time entries are as follows: "T/c with client re: private placement (0.1)"; "Exchanged e-mails with client (0.4) [and d]rafted letter to clients re: the settlement agreement (0.4)"; "Exchanged e-mails with client re: use of compensatory education for private placement (0.3)";  "T/c with client (0.1)," and; "Reviewed e-mail from clients (0.1)." (Pls.' Mot. for Att'y Fees, Ex. J at 7).

Plaintiffs regarding the School District's compliance with the settlement agreement.  Such work was proper to ensure compliance with the settlement agreement.  *See Rapu*, 793 F. Supp. 2d at 427.  But for the School District's failure to comply with the settlement agreement and failure to provide a FAPE, Plaintiff Parents would not have been required to file the underlying due process complaint.  *See id*.  Accordingly, such work is compensable.

### ii.  Time Spent in Preparation for the Due Process Hearing

The School District also contends that Attorneys Berney and Sang spent excessive time in preparation for the due process hearing.  In support, the School District refers to this Court's decision in *Elizabeth S. v. Sch. Dist. of Philadelphia*, No. 11-1570, 2012 WL 2469547 (E.D. Pa. June 28, 2012).  Notably, *Elizabeth S.* was an IDEIA case that also involved Attorney Berney. *Id.* at *3.  In *Elizabeth S.*, the defendant objected to the amount of time that Attorney Berney expended on hearing preparation.  *Id.*  This Court noted that "preparation time for a hearing should be considered relative to the length of the hearing itself."  *Id.*  In light of Attorney Berney's experience and the fact that the hearings lasted approximately twenty hours, this Court permitted reimbursement for only forty hours, excluding hours Attorney Berney spent on his closing statement, which the court found to be reasonable given the specifics of the case.  *Id.*

Here, the due process hearing occurred on three days: May 24, 2013, July 31, 2013, and August 9, 2013.  (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 14).  Attorney Berney spent approximately eight hours in total preparing for these three hearings, which lasted approximately eight hours each.  (Pls.' Mot. for Att'y Fees, Ex. A; Pls.' Reply in Supp. of Mot. for Att'y Fees 1-2).  This Court finds that Attorney Berney's preparation time is reasonable in light of the length of the hearings.

After careful review of the time entries, this Court finds that Attorney Sang spent approximately 67 hours preparing for the first hearing day, 28 hours for the second day, and 12 hours for the third day.[10]  (Pls.' Mot. for Att'y Fees, Ex. J).  In contrast to Attorney Berney, who has nearly three decades of experience litigating special education cases, (Pls.' Mot. for Att'y Fees, Ex. A at ¶ 3), Attorney Sang had approximately three years' experience litigating special education cases at the time of the hearings.  (Pls.' Mot. for Att'y Fees, Ex. J at ¶ 5).  As a result, the time ratio demonstrated above for Attorney Berney would not be appropriate for Attorney Sang given her relative lack of experience and the resulting need for more time to prepare for each hearing day.

Moreover, nearly three months elapsed between the filing of the due process complaint and the first hearing day.  During this time, Attorney Sang expended a significant number of hours on activities that would have necessarily been required to fulfill her responsibilities to her clients, including communicating with Plaintiff Parents, their experts, defense counsel, and the hearing officer.  *See, e.g.*, *Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, No. 2001-155, 2004 WL 3037953, at *4 (D.V.I. Dec. 31, 2004) (discussing the ethical duties of communication and finding no evidence that the hours expended on communicating with the plaintiff, co-counsel, and plaintiff's experts were unreasonable).  Accordingly, this Court will not reduce the billable hours that Attorney Sang expended in preparation for the first hearing.[11]

The amount of time that Attorney Sang expended in preparation for the second hearing— approximately 28 hours—is also reasonable given that over two months elapsed between the first

---

[10] In computing these figures, this Court excluded hours that were explicitly expended on the School District's motion to dismiss and settlement discussions because such work is not directly related to hearing preparation.

[11] According to Plaintiff Parents, Ms. Sang's entry of 0.8 hours on September 26, 2012 is unrelated to this matter. This entry will be excluded.  (Pls.' Reply in Supp. of Mot. for Att'y Fees 1, n.1).

and second hearing.  During this time, Attorney Sang reviewed the file, prepared witnesses, and communicated with others in order to adequately prepare for the hearing.  In light of the delay between the hearing days and the necessity of the tasks, this Court cannot say that 28 hours is an unreasonable preparation time.  The hours that Attorney Sang expended in preparation for the third hearing—12 hours—are reasonable given the approximately eight-hour length of the hearing and the nine-day interim period between the second and third hearing days.

Plaintiff Parents also provide evidence that suggests counsel for the School District expended nearly as many hours as their counsel in the handling of the underlying due process hearing.  (Pls.' Mot. for Att'y Fees 14–17, Exs. A, I, J, O, and Q).  "The Third Circuit Court of Appeals has recognized that evidence of fees and expenditures of other parties may be relevant to the issue of the reasonableness of the petitioner's fees . . . ." *Coal. to Save Our Children v. State Bd. of Educ. of State of Delaware*, 143 F.R.D. 61, 64 (D. Del. 1992) (citing *In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 587 (3d Cir. 1984)).[12]  The fact that counsel for the School District expended almost as many hours on these tasks as counsel for Plaintiff Parents further supports the reasonableness of the hours expended by counsel for Plaintiff Parents.

### iii.  Vague Time Entries

The School District also objects to a number of Attorney Sang's time entries on the grounds that they are vague.  (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 16).  The challenged time entries involve in-person, email, and telephonic communications with Plaintiff Parents. These entries do not indicate the content of the communication.  By way of example, these entries include variations of the following descriptions: "[t]/c with client," "[e]xchanged emails with client," and "[m]eeting with clients." (*Id.* at 16–17).

---

[12] In *In re Fine Paper Antitrust Litigation*, the Third Circuit explained that the number of hours expended by the defendant on the case "certainly was relevant, and arguably even helpful" for the purpose of determining the reasonableness of hours expended by the prevailing plaintiff.  751 F.2d 562, 587 (3d Cir. 1984).

"[A] fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Philadelphia Cnty. Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996) (internal quotation marks and citation omitted). A petition should include "some fairly definite information as to the hours devoted to various general activities, *e.g.,* pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, *e.g.*, senior partners, junior partners, associates." *Id.* (quoting *Rode*, 892 F.2d at 1190). The petition, however, need not contain "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Id.* at 1038 (quoting *Rode*, 892 F.2d at 1190). The petition need only "provide[] enough information as to what hours were devoted to various activities and by whom." *Id.*

Courts have repeatedly found time entries sufficiently specific where such entries merely indicate some sort of communication with a client without any exposition of the subject matter of the communication. *See, e.g.*, *Shanea S. v. Sch. Dist. of Philadelphia*, No. 12-CV-1056, 2014 WL 2586940, at *5 (E.D. Pa. June 10, 2014) (finding entries such as "t/s with client," "ltr to client," and "legal research" sufficiently specific); *Elizabeth S.*, 2012 WL 2469547, at *2 (same). Here, this Court finds that the objected-to time entries are sufficiently specific even though they do not explain the content of the communications. This Court also agrees that requiring a specific description of the content of client communications would be unnecessary.

#### iv.  Time Spent on Federal Civil Action

The School District contends that counsel for Plaintiff Parents expended an excessive amount of time on the instant federal civil action. Specifically, the School District avers that the hours expended on preparing, filing, and pursuing this action were excessive because this case is

14

not complex and counsel for Plaintiff Parents has ample experience litigating these types of cases. According to the School District, the instant complaint "unnecessarily pleads a lot of evidence, statutory and regulatory background and irrelevant allegations," and that it should have taken no more than two hours to draft. (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 19–20). The School District fails to specify any case law in support of this argument.

In response, Plaintiff Parents cite decisions in this district awarding fifteen hours or more for time expended on drafting a federal complaint. *See Neena S. ex rel. Robert S. v. Sch. Dist. of Philadelphia*, No. 05-5404, 2009 WL 2245066, at *9 (E.D. Pa. July 27, 2009). In this case, Plaintiff Parents collectively spent approximately three hours preparing and filing the complaint for the instant action. Such time is reasonable as case law strongly supports a much greater time allowance. *See id.* at *9.

The School District also argues that counsel for Plaintiff Parents spent an excessive amount of time preparing the Motion for Attorney's Fees. Attorneys Berney, Kalra, and Sang spent approximately 7.1, 17.1, and 0.4 hours, respectively, preparing Plaintiff Parents' Motion for Attorney's Fees. (Pls.' Mot. for Att'y Fees, Exs. A, I, and J). The School District contends that the hours spent preparing this motion should be reduced in light of counsel's experience. (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 19–20). The School District also contends that the hours expended on the present motion by Attorneys Berney and Kalra were excessive. The School District highlights that "numerous additional affidavits were obtained from civil rights practitioners," all of which "were unnecessary to prove the reasonableness of the hourly rates of the associates." (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 20). Plaintiff Parents, however, indicate that all but one of the affidavits provided by these practitioners were generated from other cases. (Pls.' Mot. for Att'y Fees 5).

"A party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application." *See Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey*, 297 F.3d 253, 268 (3d Cir. 2002) (citing *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978)). Such reimbursements, however, must be reasonable. *See Planned Parenthood of Cent. New Jersey*, 297 F.3d at 268 (evaluating claims of excessiveness leveled against fees generated by fee petition). A number of courts in this district have awarded over twenty hours to counsel for time expended on preparing an initial fee petition. *See, e.g.*, *Trucksess*, 2011 WL 6415047, at *5–6 (awarding over thirty hours for time expended on preparing the fee petition); *Gonzalez v. Bustleton Servs., Inc.*, No. 08-4703, 2010 WL 3282623, at *3 (E.D. Pa. Aug. 18, 2010) (awarding over twenty hours for time expended on preparing the fee petition); *Ryan P. ex rel. Christine P. v. Sch. Dist. of Philadelphia*, No. 07-2903, 2008 WL 724604, at *5 (E.D. Pa. Mar. 18, 2008) (awarding a total of 64.25 hours, including twenty hours for time expended on preparing the fee petition, in an IDEIA case).

After careful review of the time entries detailing the drafting of the instant motion for attorney's fees, and in light of rulings from other courts in this district, this Court finds that such hours were reasonably expended. Although Attorney Berney has experience filing fee petitions, he expended only approximately seven hours on this petition. The bulk of the motion was prepared by Attorney Kalra, who recently began litigating special education cases in March 2013.

Attorneys Berney and Kalra expended approximately 6.2 and 14.1 hours, respectively, on preparing Plaintiff Parents' reply to the School District's responsive brief. (Pls.' Reply in Supp. of Mot. for Att'y Fees 7). The School District has not contested the reasonableness of these hours. This Court finds that such time was reasonably expended as Plaintiff Parents' reply

16

addressed new arguments raised by the School District.  This Court also finds that the two hours that counsel expended on responding to the School District's unsuccessful Motion for a More Definite Statement were reasonable.

### v. Hours Expended on Attempting to Settle This and Other Matters with the School District

The School District also contends that Attorney Berney seeks reimbursement for time expended on attempts to settle other special education matters with the School District.  (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 20).  In support, the School District produced an email chain between Attorney Berney and the executive assistant to the School District's General Counsel.  In the emails, the two discuss potential times to have a meeting to discuss settlement of five to nine (or more) special education matters.  (Def.'s Resp. in Opp'n to Mot. for Att'y Fees, Ex. D).  The subject line of these emails indicates that this email exchange began as an attempt to settle this and other unrelated cases.[13]  In one of the exchanges, however, Attorney Berney proposed that the meeting also involve the fee petition in the instant matter.[14]

Attorney Berney billed 0.1 hours for the time he expended on the January 17, 2014 email chain.  He also billed 0.1 hours on both January 18, 2014 and January 28, 2014 for reviewing and responding to similar emails, although the School District did not produce a copy of these emails.  (Pls.' Mot. for Att'y Fees, Ex. A at 16).  Attorney Berney billed 0.3 hours for the January 31, 2014 settlement meeting that was ultimately held, and an additional 0.1 hours for reviewing an email from the School District General Counsel's executive assistant regarding the meeting that took place.  (Pls.' Mot. for Att'y Fees, Ex. A at 16-17).

---

[13] The subject line states as follows, "Attorney Fee Bills (Hackett, Robinson, Davis) and N.T. and [E.C.]"  (Def.'s Resp. in Opp'n to Mot. for Att'y Fees, Ex. D at 1).

[14] Specifically, Attorney Berney wrote the following: "I would also like to address with him the attorneys' fees pending in [E.C.] and for N.T."  (Pls.' Mot. for Att'y Fees, Ex. D at 1).

Plaintiff Parents do not contest that the email exchange involved the scheduling of a meeting to settle this and other unrelated matters.  (Pls.' Reply in Supp. of Mot. for Att'y Fees 5).  Instead, Plaintiff Parents claim that "some" email exchanges were billed to this matter because such exchanges "had to be billed to one of the cases being discussed."  (*Id.*)  With regard to the settlement meeting held on January 31, 2014, Plaintiff Parents explain that this meeting lasted approximately two hours and was split evenly amongst all cases discussed.  (*Id.*)  Attorney Berney only billed 0.3 hours for the meeting.  (Pls.' Mot. for Att'y Fees, Ex. A at 16).  Plaintiff Parents do not directly state how many cases were discussed during the meeting.  Assuming that the time expended discussing each case during this two-hour meeting was the same—0.3 hours—the parties would have discussed six to seven cases during the settlement meeting.

Faced with similar situations—where time is expended on multiple unrelated matters— courts have required that the party seeking reimbursement produce evidence of the amount of time spent discussing the matter underlying the litigation.  *See Dowd v. Se. Pennsylvania Transp. Auth.*, No. 04-294, 2006 WL 1371183, at *11–12 (E.D. Pa. May 16, 2006); *LPP Mortgage, Ltd. v. Carpenter*, No. 09-15, 2012 WL 5272940, at *5 n.7 (D.V.I. Oct. 25, 2012).  Here, Plaintiff Parents failed to produce evidence outside of the time entries that indicates whether Attorney Berney adjusted his time in proportion to the amount of work performed for each client.[15]  *See Dowd*, 2006 WL 1371183, at *11–12.  Accordingly, this Court excludes this time—0.7 hours— because Plaintiff Parents have not produced sufficient evidence of the amount of time spent on the instant matter.

---

[15] In his declaration, Attorney Berney states that he "voluntarily deducted time that [he] considered to be duplicative, redundant, or otherwise excessive."  (Pls.' Mot. for Att'y Fees, Ex. A at ¶ 31).  This statement falls short of explaining whether he adjusted time in proportion to the amount of work performed for each client.  *See Dowd*, 2006 WL 1371183, at *11–12.

### c.   Downward Adjustments to the Lodestar

The School District raises several arguments in support of reducing the lodestar.  For the reasons set forth below, the School District's arguments fail.

### i.   Degree of Success

The School District contends that the lodestar should be reduced by at least 16.66% because Plaintiff Parents were unsuccessful on two theories underlying their claim.  (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 21–23).  Specifically, as noted above, the hearing officer concluded that C.C.O. was denied a FAPE in the areas of Reading, Math, Writing, and Supplementary Aids and Services.  The hearing officer determined, however, that the School District provided C.C.O. a FAPE in the areas of Speech and Language and Postsecondary Transition.

According to the School District, the lodestar should be reduced on account of its provision of a FAPE in two out of six of the above-listed areas.  The School District does not dispute, however, that Plaintiff Parents prevailed on the threshold issues of whether the School District denied C.C.O. a FAPE and whether the School District must reimburse Plaintiff Parents for private school tuition.  (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 22).  In response, Plaintiff Parents argue that their successful and unsuccessful contentions for why the School District denied C.C.O. a FAPE are interrelated, and that under *Hensley v. Eckhart* Plaintiff Parents' lack of success on some contentions does not warrant a reduction.  (Pls.' Reply in Supp. of Mot. for Att'y Fees 6–7) (quoting *Hensley*, 461 U.S. at 437, 440).

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees . . . ."  *Hensley*, 461 U.S. at 440.  "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in

relation to the results obtained." *Id.* "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435.

In *Hensley*, the U.S. Supreme Court distinguished between claims and legal theories for the purpose of determining a party's degree of success. A plaintiff's lawsuit may set forth a claim for relief that is based on "related legal theories." *Id.* "Such a lawsuit cannot be viewed as a series of discrete claims." *Id.* Courts must instead "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* The Court continued:

> [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* Courts in this circuit have reduced the lodestar on the grounds of limited success where the defendant denied a FAPE for some, but not all, of the time period for which the plaintiffs sought reimbursement. *See, e.g.*, *Mary Courtney T. v. Sch. Dist. of Philadelphia*, CIV.A. 06-2278, 2009 WL 185426, at *8 (E.D. Pa. Jan. 22, 2009) (reducing the lodestar by 45% where the plaintiff proved he had been denied a FAPE for only part of the total time claimed); *Damian J. v. Sch. Dist. of Philadelphia*, No. 06-3866, 2008 WL 1815302, at *5 (E.D. Pa. Apr. 22, 2008) (reducing the lodestar by 5% where the plaintiff proved he had been denied a FAPE for only part of the school year). Defendants failed to specify any case where the plaintiff proved a denial of FAPE, but the court nevertheless reduced the lodestar because of a plaintiff's failure to prevail on a theory supporting the denial of a FAPE.

Here, Plaintiff Parents acquired all of the relief sought: (1) a determination that the School District denied C.C.O. a FAPE for the entire time period sought, (2) compensatory

education for a brief period in which C.C.O. was enrolled in the district's school in the 2012-
2013 school year, and (3) reimbursement for private school tuition and fees for that same time
period.  (*See* Compl., Ex. A at 2 and 30).  Accordingly, Plaintiff Parents achieved success by
obtaining their desired result.  *See Hensley*, 461 U.S. at 435.  Plaintiff Parents' failure to succeed
on its contentions that the School District failed to provide a FAPE in the areas of Speech and
Language and Postsecondary Transition is of no consequence.  Pursuant to *Hensley*, these
contentions are legal grounds supporting the denial of a FAPE, not distinct claims.  *See id.*
("[T]he court's rejection of or failure to reach certain grounds is not a sufficient reason for
reducing a fee.").  Accordingly, this Court will not reduce the lodestar on the grounds of limited
or partial success.

### ii.  Severely-Distressed Financial Condition

The School District contends that the lodestar should be reduced by 15% because of its
designation as a distressed school district within the meaning of the Public School Code of 1949,
24 P.S. § 6-691(c).  (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 23–25).  The School District
submitted evidence of this designation as well as a document entitled, "The School District of
Philadelphia [Fiscal Year] 2015 Budget in Brief" ("Budget").  (Def.'s Resp. in Opp'n to Mot. for
Att'y Fees, Ex. F).  The Budget provides that the School District is projected to end the fiscal
year 2014 with a substantial deficit, and that it will need $96.2 million in additional funds to
maintain services at the fiscal year 2014 level, "a level wholly insufficient to meet the needs of
Philadelphia's students."  (*Id.* at 2).  The School District avers that an award of attorney's fees
"will be paid by operating funds and will divert resources from direct educational services,
including services to other students with disabilities."  (Def.'s Resp. in Opp'n to Mot. for Att'y
Fees 24).  In response, Plaintiff Parents argue that the School District's ability to pay is irrelevant

to its obligation to pay attorney's fees.  This Court agrees.  Although it appears that the School District faces many difficult fiscal problems, the IDEIA's fee-shifting provision does not authorize this Court to reduce the fee award on this basis.

The Third Circuit has held in the context of an attorney's fee petition under 42 U.S.C. § 1988 that the losing party's inability to pay is irrelevant when determining the reasonableness of the fees sought.  *See Shanea S.*, 2014 WL 2586940, at *7 (citing *Inmates of Allegheny County Jail v. Pierce*, 716 F.2d 177, 180 (3d Cir. 1983)).  Although *Inmates* involved the fee-shifting provision in § 1988, this provision is virtually identical to IDEIA's fee-shifting provision.  *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 302 (2006) (indicating a similar interpretation of fee-shifting provisions in both the IDEIA and § 1988).  Accordingly, *Inmates*' interpretation of § 1988 as not permitting consideration of the losing party's inability to pay is relevant to this Court's interpretation of the present IDEIA fee-shifting provision.  Attorney's fees may not be reduced on account of the School District's inability to pay.

The School District cites the cases *Alizadeh v. Safeway Stores*, 910 F.2d 234 (5th Cir. 1990) and *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978) in support of the proposition that "[t]he financial condition of the non-prevailing party in § 1988 cases is a factor that courts may consider when determining the amount of an award for attorney's fees."  As explained in *Shanea S.*, these cases do not stand for this proposition:

> Neither [*Alizadeh* nor *Hughes*] directly support Defendant's proposition.  In *Alizadeh*, the Fifth Circuit held that "the financial condition of a nonprevailing plaintiff charged with attorneys' fees under section 1988 is a factor that ... a court should consider when fixing the amount of such an award." *Alizadeh*, 910 F.2d at 239. The Court further clarified, "Nor do we now address whether or under what circumstances a nonprevailing defendant's financial condition may be weighed in charging that party with attorneys' fees under section 1988." *Id.* at 239 n. 8.  Because the instant

22

> matter deals with a nonprevailing defendant, we do not find *Alizadeh* persuasive. Similarly, in *Hughes v. Repko*, the Third Circuit stated, "[W]e express no opinion on whether, or in what manner, a court may take into account ability to pay in exercising its discretion to award a reasonable attorney's fee under the Act," and declined to address the issue. *Hughes*, 578 F.2d at 488.

2014 WL 2586940, at *8 (further citations omitted).

The School District also cites *Barrett v. West Chester University of Pennsylvania of the State System of Higher Education*, in support of its argument that its fiscal condition is relevant in this context. No. 03-CV-4978, 2006 WL 859714 (E.D. Pa. Mar. 31, 2006). In *Barrett*, West Chester University was found to have violated Title IX in terminating its women's gymnastics program. *Id.* at *1–2. In adjudicating the fee petition under § 1988, the court noted that West Chester University is a public university with limited funds, and that the award of attorney's fees would affect both Pennsylvania taxpayers and students. *Id.* at *17–18. Citing its responsibility to ensure that taxpayers are required to reimburse prevailing parties for only necessary fees, the court reduced plaintiff's attorney's fee award by 15% based upon the financial condition of the University. *Id.*

*Barrett* did not discuss the significance of *Inmates*. Likewise, *Barrett*'s reliance on *Alizadeh* is unavailing because *Alizadeh* held that only the nonprevailing *plaintiff*'s financial condition is relevant. *See Alizadeh*, 910 F.2d at 239. *Alizadeh* expressly stated that it did not "address whether or under what circumstances a nonprevailing defendant's financial condition may be weighed in charging that party with attorneys' fees under section 1988." *Id.* at 239 n.8. Accordingly, this Court declines to follow *Barrett*.

### iii. Expert Fees

The School District contends that expert fees are not recoverable here because although the ADA and Section 504 permit reimbursement, the IDEIA does not. (Def.'s Resp. in Opp'n to

Mot. for Att'y Fees 25–26).  The School District also contends that in the instant matter the expert fees requested are not reasonable.  Plaintiff Parents make no counter argument.  Plaintiff Parents submitted an invoice for $871.25 prepared by one of its experts, Steven P. Kachmar, M.A., Ph.D., for a "[p]sychoeducational [c]onsultation."  (Pls.' Mot. for Att'y Fees, Ex. P at 3).  There is no information regarding Dr. Kachmar's hourly rate, and no evidence regarding how this consultation is related to Plaintiffs' successful result.  Plaintiff Parents also submitted invoices prepared by Nancy R. Bloomfield, Ph.D., who testified as an expert witness.  (*Id.* at 4–5).  Dr. Bloomfield charged a preparation fee of $175 per hour and a testifying fee of $200 per hour.[16]

"As with the time claimed by counsel, the prevailing party bears the burden of justifying the time claimed by its expert witnesses.  Similarly, the district court has the obligation to conduct a thorough and searching review of the time claimed by a prevailing party's experts."  *Interfaith Cmty. Org.*, 426 F.3d at 714.  Here, Plaintiff Parents have failed to provide any evidence of Dr. Kachmar's hourly rate.  Without knowing Dr. Kachmar's hourly rate, this Court cannot determine the reasonableness of his $871.25 charge.  Therefore, this Court will not award expert fees for Dr. Kachmar's charge as Plaintiff Parents have failed to satisfy their burden of showing that his fee is reasonable.

In the case of Dr. Bloomfield, hourly rates were provided by Plaintiff Parents, however no evidence was filed addressing the reasonableness of Dr. Bloomfield's hourly rate or the reasonableness of the hours expended.  In the absence of such evidence from Plaintiff Parents, this Court will not award expert fees for Dr. Bloomfield's charge.  Moreover, evidence shows

---

[16] The School District specifically objects to the reasonableness of the time expended by Mr. Kachmar and Dr. Bloomfield, but not Carolyn Macrina, MA.  (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 26).  Accordingly, this Court will not address the reasonableness of the time expended by Ms. Macrina.  *See McKenna v. City of Philadelphia*, 582 F.3d 447, 459 (3d Cir. 2009) (stating that a district court should not "decrease a fee award based on factors not raised at all by the adverse party").

that Plaintiff Parents did not seek any relief under Section 504 or the ADA in addition to the relief offered by the IDEIA.  (Compl., Ex. A at 30).  *See Ryan P. ex rel. Christine P. v. School Dist. of Philadelphia*, No. 07-2903, 2008 WL 724604, *8 (E.D. Pa. July 28, 2009) (refraining from awarding expert fees when relief was sought only under IDEA in underlying action).  Finally, seeing as no expert fees will be awarded here, this Court will not opine on whether expert fees may be awarded under Section 504 or the ADA in cases filed primarily under the IDEIA.

### iv.  Copying Costs

The School District contends that Plaintiff Parents' $661.13 copying costs are not reimbursable because they constitute general law firm overhead, which is already included in the hourly rate.  (Def.'s Resp. in Opp'n to Mot. for Att'y Fees 26).  The School District also contends that these costs are not authorized by 28 U.S.C. § 1920.

Section 1920 allows a court to tax costs, including "the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  28 U.S.C. § 1920(4).[17] The party seeking reimbursement for copying costs must describe the purpose of the charge with sufficient specificity.  *See Laura P.*, 2009 WL 1651286, at *9 (reimbursing costs for "copies for hearing," "copies of research for hearing," "copies for reply brief," and "copies of exhibits," but not for unexplained copying costs).

Section 1920 is not the only authority for awarding costs to the prevailing party.  In this Circuit, copying costs are also recoverable "as part of attorneys' fees 'when it is the custom of

---

[17] At least one court in this district has refused to reimburse for copying costs, reasoning that such costs "are ordinarily considered to be part of an attorney's rate as office overhead."  *Melissa G. v. Sch. Dist. of Philadelphia*, No. 06-5527, 2008 WL 160613, at *5 (E.D. Pa. Jan. 14, 2008) (quoting *Sheffer v. Experian Info. Solutions, Inc.*, 290 F. Supp. 2d 538, 552 (E.D. Pa. 2003)).  Section 1920, however, specifically authorizes reimbursement for copying costs.  28 U.S.C. § 1920(4) (permitting courts to tax as costs "the costs of making copies of any materials where the copies are necessarily obtained for use in the case"); *see also Law Offices of David J. Berney, P.C. v. Sch. Dist. of Philadelphia*, No. 12-CV-5033, 2014 WL 2611188, at *9 (E.D. Pa. June 10, 2014) (rejecting Defendant School District's argument that copying costs are not recoverable).

attorneys in the local community to bill their clients separately for them.'" *Disciullo v. D'Amrosio Dodge, Inc.*, No.06-1775, 2008 WL 4287319, at *7 (E.D. Pa. Sept. 18, 2008) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)).  At least one court has held that copying costs "are typically charged to a fee-paying client."  *Marthers v. Gonzales*, No. 05-3778, 2008 WL 3539961, at *4 (E.D. Pa. Aug. 13, 2008).  "[T]he fee applicant has the burden of adequately documenting and itemizing the costs requested."  *Id.* at *7 (citing *Hall v. Harleysville Ins.*, 943 F. Supp. 536, 546 (E.D. Pa. 1996)) (denying reimbursement for "photocopying expense" because the description of the cost was not sufficiently definite).  The cost per page and the number of copies cannot be excessive.  *Id.*  Additionally, the copies must be "reasonably related to the litigation" and "necessary to effective and competent representation."  *Id.* (citing *Abrams*, 50 F.3d at 1225).

Here, Plaintiff Parents submitted three invoices for copying costs.  These invoices do not describe whether they are for a specific purpose.  The first invoice for $534.64, dated September 21, 2012, contains the mere description of the type of copying charge, e.g. "electronic file printing-B/W," "insert legal tabs" and "binders."  (Pls.' Mot. for Att'y Fees, Ex. P at 7).  The second invoice for $107.83, dated May 28, 2013—four days after the first hearing—likewise contains the vague description "electronic file printing-b/w."  (Pls.' Mot. for Att'y Fees, Ex. P at 8).  The third invoice for $18.66 indicates an order date of May 23, 2013—the day before the first hearing.  (Pls.' Mot. for Att'y Fees, Ex. P at 9).  Without more information regarding the necessity or purpose of these copying costs, such costs are not reimbursable either as part of the attorney's fee award or as taxable costs under Section 1920.  *See Disciullo*, 2008 WL 4287319, at *7; *Laura P.*, 2009 WL 1651286, at *9.

**IV.**   **Conclusion**

Plaintiffs' Motion for Attorney's Fees and Costs is granted in part.  This Court awards the

following fees and costs:

| Attorney | Hourly Rate | Total Hours Sought | Adjustments (hours) | Hours Reasonably Expended | Total Fees Awarded |
|---|---|---|---|---|---|
| David Berney | $350 | 76.2 | (0.7) | 75.5 | $26,425.00 |
| Vanita Kalra | $245 | 31.2 | 0 | 31.2 | $7,644.00 |
| Jennifer Sang | $225 | 209.2 | (0.8) | 208.4 | $46,890.00 |
| Michael Morrison (paralegal) | $100 | 8.9 | 0 | 8.9 | $890.00 |

| Cost Type | Costs sought | Adjustments | Total Costs Awarded |
|---|---|---|---|
| Expert Fees for Dr. Nancy Bloomfield | $6,550.00 | (6,550.00) | $0 |
| Expert Fees for Dr. Steven Kachmar | $871.25 | (871.25) | $0 |
| Expert Fees for Carolyn Macrina, MA | $500.00 | 0 | $500.00 |
| Court Filing Fee | $400.00 | 0 | $400.00 |
| Copy Costs | $661.13 | ($661.13) | $0 |

| | |
|---|---|
| **TOTAL ATTORNEY'S FEES** | **$81,849.00** |
| **TOTAL COSTS** | **$900.00** |
| **TOTAL ATTORNEY'S FEES AND COSTS** | **$82,749.00** |

An appropriate order follows.